UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CHRISTOPHER A. HARTRANFT**,                    Case Number 3:13 CV 1570

      Plaintiff,                                        Judge Jeffrey Helmick

      v.                                                REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.                                        Magistrate Judge James R. Knepp II

### INTRODUCTION

Plaintiff Christopher A. Hartranft filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1) (Non-document entry dated July 22, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

On April 21, 2009, Plaintiff filed for DIB and SSI benefits. (Tr. 69). These claims were denied on August 29, 2009. (Tr. 62, 65). Plaintiff did not appeal. (Doc. 18 at 2; Tr. 219). Plaintiff filed new applications for DIB and SSI benefits on February 17, 2010 alleging disability since March 15, 2008. (Tr. 176, 183.)  Plaintiff's claims were denied initially (Tr. 75, 79) and on reconsideration (Tr. 86, 93).  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 100).  On April 25, 2012, Plaintiff (represented by counsel) and a vocational

expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 10-28, 29-50). On May 24, 2013 the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On July 19, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

### *Personal and Vocational History*

Born August 3, 1970, Plaintiff was 41-years-old at the time of the ALJ hearing. (Tr. 33). He has a high school education and has also been to truck driving school where he obtained a commercial driver's license (CDL). (Tr. 36, 37). Previously, he worked as a prep cook and warehouse worker. (Tr. 34, 35). Plaintiff stopped working in March 2008, the date he alleges he became disabled. (Tr. 176, 224). Plaintiff gave increasing pain in his legs, ankles, knees, hips, and back as the reason why he transitioned from warehouse worker to prep cook and why he later stopped working altogether. (Tr. 34, 45-46). However, Plaintiff also reported he had been terminated from his last job because the manager did not like his children who sometimes came to the restaurant. (Tr. 358). Additionally, Plaintiff reported he was terminated from the restaurant due to his conviction for gross sexual imposition in January 2007. (Tr. 358, 606-607).

With regard to activities of daily living, Plaintiff fed his dogs, dusted, washed dishes, cooked, and went grocery shopping with his wife. (Tr. 45). Plaintiff also watched television with his wife, did crafts, colored and played board and video games with his grandchildren, and played with his cats. (Tr. 47-48).

2

*Mental Health Evidence Before the ALJ*

Plaintiff generally challenges only the ALJ's conclusions regarding his mental limitations (Doc. 18) and therefore waives any claims about the determinations of his physical impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Specifically, Plaintiff challenges only the ALJ's treatment of Dr. Deardorff's opinion and whether the ALJ improperly failed to admit and consider Plaintiff's psychiatric evaluation and treatment notes from the prior claim file. (Doc. 15, at 12, 15). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's arguments.

The medical record before the ALJ contained numerous emergency room visits for Plaintiff's physical impairments. Emergency room records indicate a history of depression (Tr. 310, 407, 507, 518, 544, 577) and one visit in October 2011 for chest pain also documented a history of bipolar disorder (Tr. 576-77). During these visits, Plaintiff consistently had an appropriate affect. (Tr. 316, 333, 406, 408, 414, 510, 516, 519, 543, 546, 551). On one occasion where Plaintiff's mood was documented, it was listed as normal for the circumstances with no abnormal mood changes. (Tr. 325, 333).

Plaintiff's records from Neighborhood Health Association dated November 19, 2009 through March 10, 2010 indicate Plaintiff had been diagnosed with depression and prescribed paroxetine (Paxil) with no mental status finding aside from no suicidal ideation. (Tr. 353-54).

On April 22, 2009 Plaintiff sought an assessment at Rescue Mental Health Services hoping to be linked for mental health services with Unison. (Tr. 605). Plaintiff had previously been referred to Unison for mental healthcare on May 1, 2007, when he was diagnosed with

major depressive disorder, recurrent, severe with no psychotic features. (Tr. 610). Plaintiff received services from Unison for several months until his case was closed due to missing several appointments. (Tr. 611). Plaintiff reported struggling with feelings of depression, anger management, and a sleep disorder. (Tr. 606). Plaintiff also reported not having any friends, stating that he isolated himself at home. (Tr. 606). He did not report experiencing any anxiety. (Tr. 610). Plaintiff denied drug or alcohol addiction however when he did drink, he reported drinking up to twenty-four beers a few times a month. (Tr. 606, 608-09). Kathleen Capps, M.A., stated that Plaintiff had a flat affect, irritable and depressed mood and demanding behavior. (Tr. 612). Ms. Capps assessed Plaintiff with major depressive disorder, recurrent, severe without psychotic features and alcohol dependence. (Tr. 612). She assessed a global assessment of functioning (GAF) score of 45.[1] (Tr. 612).

Plaintiff returned to Rescue Mental Health for an examination on December 9, 2009 where Plaintiff reported continued symptoms of depression. (Tr. 601-02). Mary Kastner, L.S.W., opined that Plaintiff had a moderately withdrawn demeanor and appeared mildly agitated. (Tr. 604). She opined that Plaintiff's mood was severely depressed and mildly anxious and that his affect was constricted and flat. (Tr. 604). She described Plaintiff as well groomed and cooperative. (Tr. 604). With respect to cognition, Ms. Kastner found Plaintiff's orientation, memory, and ability to abstractly reason were normal but he had moderate difficulty with attention and concentration. (Tr. 604). She estimated Plaintiff's intelligence to be average. (Tr. 604).

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)" *Id.* at 34.

On April 2, 2010 Plaintiff was examined by state agency consultative examiner Paul A. Deardorff, Ph.D. (Tr. 356). On examination, Dr. Deardorff noted Plaintiff's grooming and hygiene were poor and he had a noticeable body odor. (Tr. 358). Dr. Deardorff noted that Plaintiff's conversation was neither pressured nor slowed. (Tr.358). His speech was adequately organized and conversational. (Tr. 358). Dr. Deardorff noted that Plaintiff appeared depressed, with a downcast facial expression. (Tr. 358). Dr. Deardorff also noted symptoms of anxiety such as noticeable facial flushing and sighing from time to time as if to calm himself. (Tr. 358). Plaintiff reported experiencing infrequent panic attacks accompanied by symptomatology that Dr. Deardorff found to be somewhat suggestive of posttraumatic stress disorder (PTSD). (Tr. 358). Plaintiff reported being withdrawn and disinterested in activities he previously enjoyed. (Tr. 358). He also reported experiencing trouble sleeping, erratic appetite, low energy, and difficulty controlling anger. (Tr. 358-59). With regard to sensorium and cognitive functioning, Dr. Deardorff found Plaintiff was alert, responsive, and oriented to time, place, person, and situation. (Tr. 359). Plaintiff's remote recall appeared adequate but Dr. Deardorff found Plaintiff's short term memory was weak and he had poor concentration skills. (Tr. 359). Dr. Deardorff found Plaintiff's arithmetic reasoning was "marginally adequate". (Tr. 359). Dr. Deardorff estimated Plaintiff's intelligence to be in the borderline range but found his judgment and insight to be sufficient. (Tr. 359). Dr. Deardorff assessed Plaintiff with major depressive disorder, PTSD, polysubstance dependence (in remission), and assigned a GAF score of 49[2] reflecting serious symptomatology. (Tr. 361).

Ultimately Dr. Deardorff concluded Plaintiff's mental ability to relate to others including fellow workers and supervisors was markedly impaired by his emotional difficulty and Plaintiff

---

2. *See DSM-IV-TR*, *supra*, note 1.

would likely have difficulty relating adequately to others while completing simple, repetitive tasks. (Tr. 361). Dr. Deardorff opined that Plaintiff's ability to understand, remember, and follow simple instructions was moderately impaired. (Tr. 361). Further, Plaintiff's ability to maintain attention, concentration, persistence and pace was moderately impaired by both his emotional difficulty and limited intellect. (Tr. 361). In addition, Dr. Deardorff found Plaintiff's ability to withstand stress and pressure associated with day-to-day work activity was markedly impaired by his emotional difficulties. (Tr. 362).

On May 5, 2010 state agency psychologist Kristen Haskins, Psy.D., reviewed the medical evidence of record and opined as to Plaintiff's mental residual functional capacity (RFC). (Tr. 373-376). Dr. Haskins opined that Plaintiff had only moderate limitations in mental functioning. (Tr. 373-376). Dr. Haskins further stated that only limited weight should be given to Dr. Deardorff's finding of marked impairment in Plaintiff's ability to relate to others and his ability to deal with work-related stress because that finding was not corroborated with other medical sources. (Tr. 375).

On September 6, 2010 state agency psychologist Caroline Lewin, Ph.D., reviewed the updated medical record. (Tr. 480). Dr. Lewin affirmed Dr. Haskin's assessment as written. (Tr. 480). However, she noted the existence of a July 2009 consultative examination report from Mark Hammerly, Ph.D., who found Plaintiff was moderately impaired in social interaction and stress tolerance and not impaired in his ability to understand or follow instructions or maintain attention and concentration. (Tr. 480). Dr. Lewin noted some weight should be given to Dr. Hammerly's findings but the medical evidence in the record supported finding only moderate

impairment in Plaintiff's ability to concentrate, persist, and work with detailed instructions. (Tr. 480).

### Evidence in the Supplemental Record

Plaintiff appeals, in part, the ALJ's decision not to consider any medical evidence submitted with his April 2009 social security claim. (Doc. 18, at 14). These records contain the following mental health information.

On July 25, 2007, prior to Plaintiff's alleged disability onset date, Plaintiff underwent an initial psychiatric evaluation at Unison Behavioral Healthcare for depression. (Supp. Tr. 638).[3] At the time of evaluation, Plaintiff had just been released from jail for charges of gross sexual imposition and attempted rape of a 17-year-old female minor, Plaintiff's step-niece. (Supp. Tr. 638). Plaintiff took Prozac while in jail, which helped his depressive symptoms. (Supp. Tr. 638). His psychiatric history was insignificant for past outpatient treatment however he was seen at Rescue Mental Health in 1991 and 1993 for slitting his wrists and at St. Vincent's in 1997 for overdosing on pills. (Supp. Tr. 639).

Tufal Khan, M.D., described Plaintiff's grooming and eye contact as fair, thought process as linear and goal-directed, abstract thinking as intact, and affect as congruent. (Supp. Tr. 639) Dr. Khan opined that Plaintiff's intellect was average per verbal communication and he found no significant deficits in memory, concentration, or attention. (Supp. Tr. 639). Dr. Khan assessed Plaintiff with major depression, recurrent, moderate, without psychotic features, generalized

---

3. The supplemental transcript was numbered consecutively with the original transcript but admitted as a separate document to the record before this Court. (Doc. 16). It will be identified as "Supp. Tr." for clarity.

anxiety disorder, and alcohol dependence and assigned a GAF score of 50.[4] (Supp. Tr. 639). Dr. Khan prescribed Prozac. (Supp. Tr. 640).

On August 9, 2007 Plaintiff told a nurse he was feeling better since starting Prozac but reported being easily angered and agitated. (Supp. Tr. 636). The nurse found Plaintiff still had a depressed mood and that his symptoms were affecting his judgment as well as his diet. (Supp. Tr. 636). However, she observed good hygiene, normal speech, sufficient concentration, and an organized thought process. (Supp. Tr. 636).

On September 5, 2007, Plaintiff saw Dr. Khan and reported feeling much better since being back on Prozac. (Supp. Tr. 633). He denied having problems with sleep, appetite, interest, or energy. (Supp. Tr. 633). Plaintiff stated he was still looking for a job. (Supp. Tr. 633). Dr. Khan described Plaintiff's mood on presentation as fine, his affect as congruent, and his thought process as linear and goal-oriented. (Supp. Tr. 633). Dr. Khan continued Plaintiff on Prozac and recommended continuing ongoing counseling. (Supp. Tr. 632). Subsequently, Plaintiff's case was closed due to several missed appointments. (Supp. Tr. 634-35, 641).

There are additional records from April 2009 contained in the supplemental transcript however, these are duplicative of records in the original administrative transcript before the ALJ. *Compare* (Tr. 605-13) *with* (Supp. Tr. 641-49).

Consultative Examiner Mark D. Hammerly, Ph.D, performed a psychological assessment at the request of the agency in connection with Plaintiff's prior claim. (Supp. Tr. 614). Dr. Hammerly described Plaintiff's appearance as "clean" and noted he was appropriately dressed with no body odor. (Supp. Tr. 616). Plaintiff's speech was clear and he appeared goal-oriented and logical. (Supp. Tr. 616). Plaintiff's mood seemed downcast and he reported feelings of guilt,

---

4. *See DSM-IV-TR*, *supra*, note 1.

hopelessness, helplessness, and worthlessness. (Supp. Tr. 616-17). Dr. Hammerly also noted Plaintiff seemed irritable at times. (Supp. Tr. 617).  Dr. Hammerly opined Plaintiff's mental control, concentration, and memory were grossly intact. (Supp. Tr. 617). Plaintiff's ability to abstract was in the low-average to borderline range. (Supp. Tr. 618). Ultimately, Dr. Hammerly diagnosed dysthymic disorder. (Supp. Tr. 620). He found Plaintiff's ability to interact with others and handle stress and pressures associated with day-to-day work was moderately impaired. (Supp. Tr. 620-21). Dr. Hammerly found Plaintiff's mental abilities to understand, remember, follow instructions, and to maintain attention, concentration, and pace were not impaired. (Supp. Tr. 620).

*Vocational Expert Testimony*

At the administrative hearing, the ALJ asked a VE whether jobs existed for a hypothetical individual with Plaintiff's background (age, education, and work experience) if the individual could only perform work involving simple, routine, repetitive tasks; low stress (i.e. a job having no fixed production quotes, no hazardous conditions, and only occasional decision making); no more than occasional changes; and only superficial interaction with supervisors, co-workers, and the general public. (Tr. 57). The VE opined such an individual could perform work as an electronics worker (with over 150,000 positions in the national economy and 7,500 positions in Ohio), garment sorter (with over 280,000 positions in the national economy and 14,000 in Ohio), and mail clerk (with over 280,000 positions in the national economy, 8,000 in Ohio). (Tr. 58).

*ALJ's Decision*

On May 14, 2012 the ALJ found Plaintiff had the severe impairments of status post-left ankle fracture, gastroesophageal reflux disease (GERD), depression, anxiety, and polysubstance

abuse. (Tr. 15). The ALJ found Plaintiff's physical impairments considered singly and in combination did not meet or equal a listing. (Tr.16). The ALJ found Plaintiff had only mild restrictions in activities of daily living noting he attended to grooming on a daily basis, cared for his animals, and helped with housework. (Tr. 16). Plaintiff also had only moderate difficulties in social functioning as he did not often leave home and when he did it was to visit his step-children or occasionally his mother-in-law or others. (Tr. 16-17). Further, Plaintiff had only moderate difficulties with concentration, persistence, and pace. (Tr. 16-17). The ALJ noted Plaintiff had reported low energy and being easily fatigued and bored but Plaintiff also testified he colored and played board games, card games, and video games with his grandchildren. (Tr. 17, 46-47). The ALJ then determined Plaintiff could not return to his past relevant work and his ability to perform a full range of light work was impeded by additional limitations. (Tr. 21-22).

Next, the ALJ found Plaintiff had the RFC to perform the full range of light work limited to occasional pushing or pulling with the lower left extremity; no climbing of ladders, ropes or scaffolds; and no exposure to hazardous machinery and unprotected heights. Plaintiff required work  limited to simple, routine, repetitive tasks; work in a low-stress job (defined as having no fixed production quotas, no hazardous conditions, only occasional decisions-making required and only occasional changes in the work setting; and superficial interactions with supervisors, co-workers, and the public). (Tr. 17). Based on Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ found Plaintiff could work as an electronics worker, garment sorter, and mail clerk. (Tr. 58). Thus the ALJ found Plaintiff was not disabled. (Tr. 22).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1.      Was claimant engaged in a substantial gainful activity?

11

2.      Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.      Does the severe impairment meet one of the listed impairments?

4.      What is claimant's residual functional capacity and can claimant perform past relevant work?

5.      Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy.  *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ erred by failing to properly evaluate medical source opinions and by not admitting or considering evidence from a prior claim that was used at other levels of the adjudicatory process but not admitted to the file before the ALJ. (Doc. 18, at 11, 14). Each of these issues will be addressed in turn.

### *Medical Source Opinions*

Plaintiff argues the ALJ erred by giving great weight to the state agency reviewing psychologist's opinion and limited weight to examining psychologist Dr. Deardorff. (Doc. 18, at

12

11-12). Specifically, Plaintiff argues the ALJ never considered whether Dr. Deardorff's opinion was consistent with and supported by his examination as required by the regulations. (Doc. 18, at 14).

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Importantly, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (*quoting* SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004).

Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment

13

relationship with them. 20 C.F.R. §§ 404.1502, 416.927. This includes a consultative examiner. *Id.* When determining what weight to give examining sources the same factors that are considered for treating physicians must be considered including the supportability of the opinion and the consistency of the opinion with the record as a whole. *Id.*

Last in the medical source hierarchy are non-examining sources. These are physicians, psychologists, or other acceptable medical sources who have not examined the claimant, but review medical evidence and provide an opinion. 20 C.F.R. §§ 404.1502, 416.927. This includes state agency physicians and psychologists. *Id.* The ALJ "must consider findings and other opinions of [s]tate agency medical and psychological consultants . . . as opinion evidence", except for the ultimate determination about whether the individual is disabled. 20 C.F.R. § 404.1527(e)(2)(ii).

Here, the ALJ gave examining consultant Dr. Deardorff's opinion limited weight as follows:

> [Dr. Deardorff] concluded that the claimant's ability to understand, remember and follow simple instructions is moderately impaired and that his ability to relate to others including fellow workers and supervisors is markedly impaired. (Exh. 3F). The examiner also concluded that the claimant's ability to maintain attention, concentration, persistence and pace is moderately impaired and his ability to withstand the stress and pressures associated with day-to-day work activity is markedly impaired. (Id.) The undersigned affords this opinion limited weight because it slightly overstates the degree of limitation, which the claimant's mental impairments cause. For example, although the claimant's attention and concentration were "not strong," his arithmetic abilities were "reasonably adequate" and his judgment was "sufficient" (Exh. 3F). In addition, there is little evidence documenting the progression of the claimant's mental impairment's short of an Adult Diagnostic Assessment, which notes the claimant's his [sic] anxious and depressed mood, but cooperative behavior, indicating his ability to get along with others, at least on a superficial level.

(Tr. 20-21).

As Plaintiff correctly points out in his Brief on the Merits, the ALJ misstated Dr. Deardorff's description of Plaintiff's arithmetic abilities as "reasonably adequate" when actually Dr. Deardorff had described them as "marginally adequate". (Doc. 18, at 13); (Tr. 21, 359). However, this error is harmless. Excluding any assessment of Plaintiff's arithmetic abilities, the ALJ supports his decision to give limited weight to Dr. Deardorff's opinion with clearly articulated good reasons.

As the ALJ correctly points out, there is little evidence in the record documenting the progression of Plaintiff's mental state except for an adult diagnostic assessment completed in December of 2009 by Rescue Mental Health Services. (Tr. 21, 604). During this assessment, Plaintiff showed symptoms of severe depression but was cooperative with examiners which as the ALJ noted, indicates an ability to get along with others at least on a superficial level. (Tr. 21, 604). Moreover, the examiner found Plaintiff's memory and ability to abstractly reason remained unaffected and he had only moderate difficulty with attention and concentration. (Tr. 604). Further, as the ALJ noted, Dr. Deardorff found Plaintiff had sufficient judgment, calling into question whether Plaintiff's concentration and attention abilities were truly so poor. (Tr. 21, 359).

Moreover, in evaluating whether Plaintiff's opinion met a listing as required by Step 3, the ALJ noted Plaintiff had only mild restriction in daily living and was able to perform basic household chores. (Tr 16, 45). Further, Plaintiff only had moderate difficulties in terms of social functioning. (Tr. 16). In determining Plaintiff had only moderate difficulties with attention and concentration, the ALJ noted Dr. Deardorff's opinion that Plaintiff's attention and concentration were "not strong" as well as Plaintiff's testimony that he was both easily fatigued and bored. (Tr.

15

17, 46-47). However, the ALJ also considered that Plaintiff testified to coloring, playing board games, card games, and video games, with his grandchildren, indicating an ability to concentrate, thus he found Plaintiff's ability to concentrate was only moderately impaired. (Tr. 17, 47-48).

Moreover, the ALJ discussed Plaintiff's inconsistent statements in the body of her RFC decision. "The fact that the ALJ did not analyze the medical evidence for a second time (or refer to her previous analysis) when rejecting Dr. [Deardorff's] opinion does not necessitate remand of Plaintiff's case." *Dailey v. Colvin*, 2014 U.S. Dist. LEXIS 82267, at *23 (N.D. Ohio) (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006)).

Thus the ALJ gave good reasons for giving Dr. Deardorff's opinion limited weight by clearly indicating how the opinion was inconsistent with the evidence of record and lacks support from other mental health records.

Plaintiff also takes issue with the ALJ's affording of great weight to the opinions of non-examining consultants Drs. Haskins and Lewin's.[5] The doctors found that Plaintiff "retains the ability to perform simple, routine, repetitive work in a well-controlled environment with infrequent, superficial interaction with co-worker/supervisors". The ALJ found this opinion highly credible because "it is generally consistent with the medical evidence of record as a whole. For example, although the claimant's attention and concentration were 'not strong,' his arithmetic abilities were 'reasonably adequate,' and his judgment was sufficient." (Tr. 20, 360-62). Further, the non-examining consultants' opinions accommodated for Plaintiff's deficiencies by limiting him to a low-stress job that has no productions quotas, hazards, and limited social interaction. (Tr. 20, 375, 480).

Upon review, the ALJ provided good reasons to afford the consultative psychologists'

---

[5] The ALJ mistakenly references exhibit 13F affirming Plaintiff's physical RFC instead of 11F which affirms his mental RFC evaluation.

opinions great weight, namely that the opinions were consistent with the evidence in the record and accurately indicated what Plaintiff could do despite his limitations. Of importance, the ALJ was not required to conduct a factor-by-factor analysis of the consultative examiners' opinions. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Blakely*, 581 F.3d at 407. As such, the ALJ gave good reasons for affording these opinions greater weight than Dr. Deardorff.

***Sentence Six Remand***

Next, Plaintiff argues remand is required under sentence six because the ALJ failed to admit or consider evidence from Plaintiff's prior claim file. (Tr. 14). Specifically, Plaintiff argues that medical records submitted in connection with Plaintiff's first applications for DIB and SSI should have been considered by the ALJ. (Doc. 18, at 14). These records consist of (1) Dr. Hammerly's July 2009 consultative examination report and (2) mental health records from Unison from 2007 and April 2009. (Supp. Tr. 614-50).

Under sentence six of 42 U.S.C. § 405(g), the district court does not affirm, modify, or reverse the Commissioner's decision; it does not rule in any way as to the correctness of the administrative determination. *Melkonyan v. Sullivan*, 501 U.S. 89 (1991); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 734 (N.D. Ohio) ("'Sentence six' of 42 U.S.C. § 405(g) permits a reviewing court to remand, without ruling on the merits"); *see also*, *Anthony v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 180708, at *6-8 (N.D. Ohio). If a sentence six remand is ordered, the district court retains jurisdiction while the matter is remanded to the social security administration for further proceedings; it is not a final judgment that can be appealed. *Melkonyan*, 501 U.S. 89; *Cross*, 373 F. Supp. 2d 724; *Wasik v. Comm'r of Soc. Sec.*, 2011 U.S.

17

Dist. LEXIS 18106 (E.D. Mich.).

A claimant must establish two prerequisites before a district court may order a sentence six remand. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2001). A claimant must show: (1) the evidence at issue is both "new" and "material"; and (2) there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). The party seeking remand bears the burden of showing these two requirements are met. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

### *New and Material*

The Sixth Circuit explained "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon*, 447 F.3d at 483-84 (citing *Foster*, 279 F.3d at 357). Such evidence, in turn, is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Foster*, 279 F.3d at 357.

Here, Plaintiff argues the evidence is new because the records provide additional information not contained in the transcript before the ALJ. (Doc. 18, at 14-15). Specifically, Plaintiff argues he only had access to the prior claim file because it was part of the "Case Documents" which are generally moved to exhibits when admitted, thus there was no reason to move to have them admitted. (Doc. 20, at 4-5). According to Plaintiff, he requested to have the supplemental record admitted in his pre-hearing memoranda and hence it should have been admitted to the record before the ALJ. (Doc. 20, at 5).

Plaintiff's argument is without merit. Although Plaintiff argues he had "no reason to re-

18

submit evidence that was already in 'Case Documents,'" Plaintiff does not explain how the evidence being in case documents makes it new as required for a sentence six remand. (Doc. 20, at 4-5; *see also* Doc. 18, at 14-18). Rather, the fact the evidence was in case documents before the ALJ hearing proves the evidence was in fact in existence and available to Plaintiff at the time of the ALJ hearing. Thus, the evidence is not new as required for a sentence six remand.

Moreover, regardless of whether the evidence is new, it is not material. Plaintiff asserts the records are material because the ALJ "complained about the lack of mental health records," and the evaluations done at Unison support the more serious impairment documented by Dr. Dearforff. (Doc. 18, at 15-16, Tr. 19). However, Plaintiff's visits to Unison took place entirely in 2007 before Plaintiff's March 2008 alleged disability onset date with the exception of one visit in April 2009 that is accounted for in the original transcript before the ALJ. *Compare* (Tr. 605-13) *with* (Supp. Tr. 641-49). Moreover, these records do little to support Dr. Deardorff's findings. During these visits Plaintiff's intellect was noted as average, with no difficulties in memory, concentration, or attention. (Supp. Tr. 639). Although Plaintiff once reported his symptoms were affecting his judgment, he still had good hygiene, normal speech, sufficient concentration, and an organized thought process. (Supp. Tr. 636). This is a far reach from Dr. Deardorff's findings that Plaintiff had poor hygiene, a limited intellect, trouble concentrating, and poor memory recall. (Tr. 358-361).

Similarly, the records from Plaintiff's 2009 assessment by consultative examiner Dr. Hammerly offer little to support Dr. Deardorff's findings. Dr. Hammerly found no impairment with Plaintiff's memory or concentration and he found only moderate impairment with Plaintiff's ability to handle stress and social interactions. (Supp. Tr. 620-21).

In short, the supplemental records are from before Plaintiff's alleged disability onset date and do not support a finding of impairment as severe as was found by Dr. Deardorff. Therefore, the records are not material because the Commissioner would not have arrived at a different outcome in this case.

**Good Cause**

Further, Plaintiff has not established good cause for his failure to see that the documents were admitted to the record before the ALJ. To establish good cause for failure to incorporate evidence into the record at the time of the hearing, the claimant must provide a "valid reason for failing to obtain the evidence prior to the ALJ's decision." *Cross*, 373 F. Supp. 2d, at 734 (citing *Cline*, 96 F.3d at 149); *see also Beaty v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 124685, at *22-23 (W.D. Mich.) ("The Sixth Circuit has taken a 'harder line'" on the issue of good cause, and requires the moving party to "explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision.") (quoting *Courter v. Comm'r*, 479 F. App'x 713 (6th Cir. 2012)). "Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act." *Lockett v. Astrue*, 2012 U.S. Dist. LEXIS 60572, at *30 (S.D. Ohio) (quoting *Koulizos v. Sec'y of Health and Human Servs.*, 802 F.2d 458, 1986 U.S. App. LEXIS 18275 (6th Cir.)). "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, 2009 U.S. Dist. LEXIS 128179, at *13 (W.D. Ky.).

Plaintiff argues "good cause" exists in this case because the evidence was part of

Plaintiff's prior claim file and Plaintiff specifically requested this evidence be admitted in his pre-hearing memoranda. (Doc. 18, at 15; Tr. 292 fn1). Plaintiff asserts because the ALJ never addressed this evidence's admission, good cause exists for Plaintiff's failure to admit the evidence. However, the ALJ asked Plaintiff's counsel at the hearing whether he considered the record before him to be complete and Plaintiff's counsel merely responded by stating the record was up to date and did not raise the issue that there was more evidence to admit. (Tr. 32). In sum, Plaintiff does not provide a reason for his failure to raise this issue during the hearing. (Doc. 18, 14-18).

Plaintiff further argues the Court may order a sentence six remand because the ALJ did not follow Social Security's own hearing office procedures provided in its Hearings, Appeals, & Litigation Law Manual (HALLEX). (Doc. 18, at 16-17). Specifically, Plaintiff argues HALLEX requires the ALJ to admit evidence from a prior claim if it is material to the current claim. (Doc. 18, at 16-17). However, as explained above, Plaintiff has not proven the requisite elements to warrant a sentence six remand. Further, while the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings. *See Bowie v. Commissioner of Social Security,* 539 F.3d 395, 399 (6th Cir.2008) (observing that the procedural guidance in HALLEX is "not binding on this court"). Because Plaintiff has failed to show that the ALJ's failure to comply with HALLEX justifies a sentence six remand or that he is otherwise entitled to remand based on HALLEX, this assignment of error lacks merit.

21

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).